1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11  WELLS FARGO BANK, N.A.,        )   CV 15-7768 RSWL (PJWx)
                                    )
12                   Plaintiff,     )
          v.                        )   **ORDER Re: PLAINTIFF AND**
13                                  )   **CHASE BANK'S STIPULATION**
    JULIA A. WEEMS, an              )   **TO TURNOVER FUNDS [73];**
14  individual; JULIA WEEMS         )   **PLAINTIFF'S MOTION FOR**
    LLC, a Delaware Limited         )   **DEFAULT JUDGMENT BY THE**
15  Liability Company; TERESITA )       **COURT [74]; DEFENDANT**
    BHAKTA GRANTOR TRUST, form )        **JULIA WEEMS' MOTION TO**
16  of entity unknown; JPMORGAN )       **SET ASIDE ENTRY OF**
    CHASE BANK, N.A., a             )   **DEFAULT [78].**
17  National Banking                )
    Association; and DOES 1-20, )
18  inclusive,                      )
                                    )
19                   Defendants.    )
    _____)
20

21

22

23       This action arises from Defendants Julia A. Weems

24  ("Weems"), Julia Weems, LLC ("JWLLC"), and the Teresita

25  Bhakta Grantor Trust's ("the Trust") (collectively

26  "Defendants") removal of more than a half million

27  dollars from Defendants' account with Plaintiff Wells

28  Fargo Bank ("Plaintiff"), in contravention of a Notice

                                1

of Levy served by the Internal Revenue Service ("IRS").

Now before this Court is Plaintiff and JPMorgan Chase Bank's ("Chase") Stipulation to Turn Over Funds [73], Plaintiff's Motion for Default Judgment by the Court [74], and Defendant Weems' Motion to Set Aside Entry of Default [78].

## I.   BACKGROUND

### A.   Factual Background

On September 1, 2015, Defendants opened a deposit account at Wells Fargo (the "Wells Fargo Account") by depositing a U.S. Treasury check in the amount of $526,280.64, Compl. ¶ 11, and executing a Consumer Account Application ("the Application").  Decl. of Benita Sheffield ("Sheffield Decl.") 2:20-25.  On September 1, 2015, Weems also executed, on behalf of herself and JWLLC, a California Certification of Trust. Sheffield Decl. 2:26-3:2.  In the Application, Defendants acknowledged that they had "'received a copy of the applicable account agreement . . . and agreed to be bound by [its] terms.'"  Id. at 3:3-6 (citing Consumer Account Agreement, Ex. 3).

On September 15, 2015, Plaintiff Wells Fargo ("Plaintiff") received a Notice of Levy from the IRS, which identified the Trust and JWLLC as the affected taxpayers and stated an amount due of $638,698.36. Compl. ¶ 12; Sheffield Decl. 3:12-15; see Sheffield Decl., Ex. 5.  On September 21, 2015, Weems withdrew $500,000.00 ("the Funds") from the Wells Fargo Account

by purchasing a cashier's check in this amount, made
payable to JWLLC.  Compl. ¶ 13; Sheffield Decl. 3:18-23.
Weems also withdrew $500.00 from an ATM.  Id.; Decl. of
Timothy O. Merck ("Merck Decl.") Ex. 8.  At the time of
the withdrawals, Defendants were subject to the IRS Levy
and had not presented a Release of Levy from the IRS to
Plaintiff.  Compl. ¶ 13.  On September 21, 2015, Weems
deposited the Funds into an account maintained by JWLLC
at a branch of JPMorgan Chase ("the Chase Account").
Id. at ¶ 15.  Chase accepted the check for deposit and
credited the Chase Account on September 21, 2015.  Id.
at ¶ 16.

　　　After discovering the Funds had been withdrawn from
the Wells Fargo Account in contravention of the IRS
Levy, Plaintiff debited the Wells Fargo Account in the
amount of $526,280.64, resulting in an overdraft of the
Wells Fargo Account by $500,625.00.  Id. at ¶ 17.
Defendants have not returned or otherwise reimbursed
Plaintiff for the Funds.  Id. at ¶ 18.

**B.   Procedural Background**

　　　On October 5, 2015, Plaintiff filed an *Ex Parte*
Application [9], requesting that this Court issue a
temporary restraining order and set an order to show
cause hearing regarding a preliminary injunction.  On
October 8, 2015, this Court granted Plaintiff's *Ex Parte*
Application for Temporary Restraining Order and
Preliminary Injunction [32].  Defendants were ordered to
show cause, by October 22, 2015, as to why they should

3

not be restrained and enjoined, pending trial of this
action, from moving, transferring, or otherwise using
the Funds from the JPMorgan Chase Account.  Order dated
10/8/2015, 14:9-19, ECF No. 32.  Defendants did not
respond to this Court's Order to Show Cause within the
time proscribed.

On November 3, 2015, Weems filed a Verified
Affidavit by Specific Negative Averrment [60].  On
November 13, 2015, Plaintiff filed a Request for Entry
of Default against Defendants JWLLC and the Trust [65].
On November 16, 2015, this Court entered default against
JWLLC and the Trust [67].  On November 17, 2015,
Plaintiff filed a Request for Entry of Default against
Defendant Weems [68].  On November 18, 2015, this Court
entered default against Weems [69].  On December 11,
2015, this Court entered a preliminary injunction
against Defendants [71], pending the resolution of the
matter at trial, as Defendants failed to respond to this
Court's previous Order to Show Cause [9] as to why
Defendants should not be preliminarily restrained.

On December 17, 2015, Plaintiff and Chase filed
their Stipulation re: Turnover of Funds to Welss Fargo
Bank, N.A. and Dismissal of Defendant JPMorgan Chase
Bank, N.A. [73].  Also on December 17, 2015, Plaintiff
filed its Motion for Default Judgment [74] against all
Defendants.  On December 29, 2015, Weems filed a Motion
to Set Aside Entry of Default [78], along with its
correlating Memorandum of Points and Authorities [79]

4

1  and Weems' Declaration in Support [81].  On January 5,
2  2016, Plaintiff filed its Reply in Support of its Motion
3  for Default Judgment [82].  On January 8, 2016, Weems
4  filed a Declaration in Support of her Motion to Set
5  Aside Entry of Default [93] and her Opposition to
6  Plaintiff's Motion for Default Judgment [94].  On
7  January 12, 2016, Plaintiff filed its Opposition to
8  Weems' Motion to Set Aside Entry of Default [99].  The
9  hearing on Plaintiff's Motion for Default Judgment was
10 set for January 19, 2016, and was taken under submission
11 on January 15, 2016 [100].  The hearing on Weems' Motion
12 to Set Aside Entry of Default was set for February, 2,
13 2016, and was taken under submission on January 28, 2016
14 [103].

15                    **II.    ANALYSIS**

16 **A.   Legal Standards**

17      1.   Motion for Default Judgment

18      Default judgment is within the discretion of the
19 district court.  Aldabe v. Aldabe, 616 F.2d 1089, 1092
20 (9th Cir. 1980); see Fed. R. Civ. P. 55.  A party
21 applying to the Court for default judgment must satisfy
22 both procedural and substantive requirements.

23      Procedurally, the requirements set forth in Federal
24 Rules of Civil Procedure Rules 55 and 56, and Local Rule
25 55-1 must be met.  See Vogel v. Rite Aid Corp., 992 F.
26 Supp. 2d 998, 1006 (C.D. Cal 2014).  Local Rule 55-1
27 provides: "When an application is made to the Court for
28 a default judgment, the application shall be accompanied

by a declaration in compliance with F.R.Civ.P. 55(b)(1)
and/or (2) and include the following: (a) When and
against what party the default was entered; (b) The
identification of the pleading to which default was
entered; (c) Whether the defaulting party is an infant
or incompetent person, and if so, whether that person is
represented by a general guardian, committee,
conservator or other representative; (d) That the
Service Members Civil Relief Act, 50 U.S.C. App. § 521,
does not apply; and (e) That notice has been served on
the defaulting party, if required by Federal Rule of
Civil Procedure 55(b)(2)."  L.R. 55-1.

Substantively, the Ninth Circuit has directed that
courts consider the following factors, referred to as
the Eitel factors, in deciding whether to enter default
judgment: "(1) the possibility of prejudice to
plaintiff, (2) the merits of plaintiff's substantive
claims, (3) the sufficiency of the complaint, (4) the
sum of money at stake in the action, (5) the possibility
of a dispute concerning the material facts, (6) whether
defendant's default was the product of excusable
neglect, and (7) the strong public policy favoring
decisions on the merits." See Vogel, 992 F. Supp. 2d at
1005; see also Eitel v. McCool, 782 F.2d 1470, 1471-72
(9th Cir. 1986).  Additionally, "[w]hen entry of
judgment is sought against a party who has failed to
plead or otherwise defend, a district court has an

1  affirmative duty to look into its jurisdiction over both
2  the subject matter and the parties." <u>In re Tuli</u>, 172
3  F.3d 707, 712 (9th Cir. 1999).

4      2.   <u>Motion to Set Aside Entry of Default</u>

5      The Federal Rules of Civil Procedure provide that a
6  "court may set aside an entry of default" upon a showing
7  of "good cause." Fed. R. Civ. P. 55(c). To determine
8  whether "good cause" exists, a court must consider the
9  following three factors: "(1) whether [the party seeking
10 to set aside the default] engaged in culpable conduct
11 that led to the default; (2) whether [it] had [no]
12 meritorious defense; or (3) whether reopening the
13 default judgment would prejudice the other party."
14 <u>United States v. Signed Personal Check No. 730 of Yubran</u>
15 <u>S. Mesle</u>, 615 F.3d 1085, 1091 (9th Cir. 2010) (citing
16 <u>Franchise Holding II, LLC v. Huntington Rests. Grp.,</u>
17 <u>Inc.</u>, 375 F.3d 922, 925-926 (9th Cir. 2004)). "[A]
18 finding that any one of these factors is true is
19 sufficient reason for the district court to refuse to
20 set aside the default." <u>Id.</u> Finally, the Ninth Circuit
21 has emphasized the strong policy of "deciding cases on
22 the merits whenever possible," and has stated that
23 "'judgment by default is a drastic step appropriate only
24 in extreme circumstances; a case should, whenever
25 possible, be decided on the merits.'" <u>Id.</u> at 1091.
26 **B.  <u>Analysis</u>**

27     1.   <u>Plaintiff's Request for Judicial Notice</u>

28                              7

1    Plaintiff requests that this Court take judicial
2  notice of a printout from Delaware Secretary of State's
3  website:(https://icis.corp.delaware.gov/Ecorp/EntitySear
4  ch/NameSearch.aspx), showing "Entity Details" for
5  Defendant JWLLC.   Req. for Judicial Notice ("RJN") 1:7-
6  9, ECF No. 75.   A court may take judicial notice of
7  facts that are "'not subject to reasonable dispute in
8  that [they are] either (1) generally known within the
9  territorial jurisdiction of the trial court or (2)
10 capable of accurate and ready determination by resort to
11 sources whose accuracy cannot reasonably be
12 questioned.'"   Louisiana Pac. Corp. v. Money Mkt. 1
13 Inst. Inv. Dealer, 2011 U.S. Dist. LEXIS 32414 (N.D.
14 Cal. Mar. 28, 2011)(quoting Fed. R. Evid. 201(b)).

15    This Court finds that the accuracy of the source
16 provided, the Delaware Secretary of State's website,
17 cannot reasonably be questioned as federal courts
18 frequently rely on the accuracy of information obtained
19 from government websites.[1]   Further, this Court finds
20 that the entity details of JWLLC are capable of accurate
21 and ready determination by reference to the subject of
22 Plaintiff's RJN.   See RJN, Ex. A.   Accordingly, this
23 Court **GRANTS** Plaintiff's Request for Judicial Notice

24

25    [1]See Paralyzed Veterans of Am. v. McPherson, 2008 U.S. Dist.
   LEXIS 69542, *17-18 (N.D. Cal. Sept. 8, 2008)(taking judicial
26 notice of letters and information appearing on and printed from
   California Secretary of State website - citing numerous decisions
27 from federal circuits and district courts all approving judicial
   notice of information obtained from government websites.).

28                                      8

[75].

 2. <u>Weems' Motion to Set Aside Entry of Default</u>

This Court finds there is no "good cause" to warrant granting Weems' Motion to Set Aside Entry of Default [78].

 a. *There is no "good cause" to set aside the default.*

To determine whether "good cause" exists to set aside an entry of default, a court must consider (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default, (2) whether that party had a meritorious defense, and (3) whether setting aside the default judgment would prejudice the other party. <u>Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.</u>, 375 F.3d 922, 925-926 (9th Cir. 2004). "[A] finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." <u>Id.</u>

 i. *Weems engaged in culpable conduct leading to default.*

In the present case, there is ample evidence showing Weems engaged in culpable conduct. Specifically, Weems was unresponsive to Plaintiff's Complaint and attempts at communication. Weems was additionally unresponsive to this Court's October 8, 2015 Order to Show Cause [32]. Weems' culpable conduct directly resulted in this Court's entry of default

against her, and consequently Plaintiff pursuing entry of default judgment.

> ### 1.   Weems did not respond to this Court's Order to Show Cause.

On October 5, 2015, Plaintiff's counsel spoke with Weems multiple times on the telephone and informed her that Plaintiff would be filing *ex parte* applications for a temporary restraining order ("TRO"), preliminary injunction, right to attach orders, and writs of attachment.  Decl. of Leigh O. Curran ("Curran Decl."), ¶ 2, ECF No. 99-1.  Weems replied she had a stipulation to propose, but never furnished Plaintiff with such a stipulation.  Id. at ¶ 4.  On October 8, 2015, this Court granted Plaintiff's TRO application and ordered Defendants to show cause as to why they should not be preliminarily restrained from accessing the Funds pending the resolution of the matter at trial.  Order dated 10/8/15, ECF No. 32.  Defendants were ordered to show cause no later than October 22, 2015.  Id.  Weems did not respond to this Court's Order to Show Cause.

> ### 2.   Weems did not file any responsive pleadings to Plaintiff's summons and Complaint.

Plaintiff completed effective service of process of its original summons and Complaint on Defendants on October 12, 2015 [40].  Federal Rule of Civil Procedure 12(a) prescribes that a defendant must serve an answer

"within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1)(A)(I). As such, Weems' deadline to file a responsive pleading was November 2, 2015.

On November 3, 2015, rather than filing a responsive pleading, Weems filed a Verified Affidavit by Specific Negative Averment [60], in which she denied some, but not all of the allegations in Plaintiff's Complaint. See V. Aff. by Specific Negative Averrment, ECF No. 60. Weems did not otherwise respond to Plaintiff's complaint or address this Court's October 8, 2015 Order to Show Cause.

An "affidavit by specific negative averment" neither qualifies as one of the pleadings allowed under Fed R. Civ. P. 7(a), which lists the "[o]nly" pleadings allowed to be filed, nor does the document qualify as a motion under Fed. R. Civ. P. 7(a). A specific negative averment is used to challenge a plaintiff's authority to sue, among other defenses. Fed. R. Civ. P. 9. A negative averment must be made "*in* the responsive pleading or by motion before pleading." Summers v. Interstate Tractor & Equip. Co., 466 F.2d 42, 50 (9th Cir. 1972).

On November 4, 2015, Plaintiff's counsel wrote a letter to Weems, warning her that Defendants were facing an approaching deadline to respond to Plaintiff's summons and Complaint. See Curran Decl. Ex. 2. The

11

letter informed Weems that if she did not file a
responsive pleading by November 16, 2015, Plaintiff
would move forward with requesting entry of default
against her.  Id.  Additionally, this letter enclosed a
proposed stipulation that may have resolved the case.
Id.  Weems acknowledged receipt of this letter on
November 10, 2015 when she telephoned Plaintiff's
counsel to inform Plaintiff that she was having legal
advisers review Plaintiff's proposed stipulation.  Id.
at ¶¶ 9-10.

     After having been provided fair warning by
Plaintiff's Counsel, Weems still did not otherwise
respond to Plaintiff's Complaint and did not seek this
Court's permission for additional time to file a
responsive pleading.  Defendant JWLLC and the Trust
filed nothing in response.  On November 17, 2015,
Plaintiff requested that the Clerk of this Court enter
default against Weems [68].  On November 18, the clerk
entered default against Weems [69].  On December 17,
2015 Plaintiff filed its Motion for Default Judgment
[74] against Defendants.  On December 29, 2015, Weems
filed her Motion to Set Aside Entry of Default [78].
Weems has been largely unresponsive throughout this
litigation, in her dealings with both Plaintiff and this
Court.  This Court finds her conduct to be sufficiently
culpable to warrant a denial of her Motion to Set Aside
Default Judgment [78].

As noted above, for this Court to determine whether "good cause" exists to set aside an entry of default, the Court must consider a number of factors, including whether the party seeking to set aside the default engaged in culpable conduct that led to the default. Franchise Holding, 375 F.3d at 925-926.  Again, "a finding that any one of the[] factors is true is sufficient reason for the district court to refuse to set aside the default." Id.  Accordingly, as this Court finds there is ample evidence to determine that Weems engaged in culpable conduct directly leading to the entry of default against her, this Court need not consider the remaining factors and should, on this basis alone, find that no "good cause" exists to grant Weems' Motion [78].  For these reasons, this Court **DENIES** Weems' Motion to Set Aside Entry of Default [78].

b. *Policy Favoring Adjudication on the Merits*

Plaintiff has been diligent in communicating with Weems throughout every step of this litigation. Plaintiff communicated with Weems on a number of occasions regarding Plaintiff's applications for a TRO, preliminary injunction, right to attach orders, and writs of attachment.  See Curran Decl. ¶ 2.  Plaintiff graciously warned Defendants' of their respective responsive pleading deadlines to Plaintiff's Complaint. Curran Decl. Ex. 2.  Furthermore, Plaintiff attempted to stipulate to a resolution of the issue before seeking

entry of default against Defendants. Id. Although there is evidence that Weems herself attempted to resolve the case through stipulation, the record indicates these efforts were abandoned without explanation. Curran Decl. ¶¶ 4, 6, 9-11.

This Court recognizes the strong policy favoring adjudication of matters on the merits. See Franchise Holding, 375 F.3d at 1091. However, this Court finds that granting Weems' Motion to Set Aside Default is not warranted in light of the circumstances. Accordingly, this Court **DENIES** Weems' Motion to Set Aside Entry of Default [78].

3.   Plaintiff's Motion for Default Judgment

Plaintiff seeks entry of default judgment against all Defendants for failure to respond or otherwise defend themselves in this matter. See generally Mot. for Default J. ("Mot."), ECF No. 74.

a.   *Jurisdiction and service of process.*

In considering whether to enter default judgment against a party for failing to plead or otherwise defend himself in an action, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. In re Tuli, 173 F.3d 707, 712 (9th Cir. 1999).

Generally, a defect in personal jurisdiction is a defense that must be asserted or waived by a party. Id. at 712 (citing Fed. R. Civ. P. 12(h)(1)). However, when

14

a court is considering whether to enter a default judgment, the court may dismiss the action *sua sponte* for lack of personal jurisdiction, for a "judgment entered without personal jurisdiction over the parties is void." Id. This Court finds that service of process was proper, and the Court has jurisdiction over the parties and the subject matter in this action.

### i. *Personal jurisdiction*

In states where no applicable federal statute governs personal jurisdiction, that state's long-arm statute applies. See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). The exercise of personal jurisdiction over a nonresident defendant requires the presence of two factors: (1) California's laws must provide a basis for exercising personal jurisdiction, and (2) the assertion of personal jurisdiction must comport with due process. Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1477 (9th Cir. 1986). California's long arm statute permits the exercise of personal jurisdiction to the fullest extent permitted by due process. See Cal. Civ. Proc. Code § 410.10; Panavision, 141 F.3d at 1320. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800-01 (9th Cir. 2004). Thus,

15

only a due process analysis is required here.

Due process requires that a defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Depending on the nature and scope of the defendant's contacts with the forum, jurisdiction may be general or specific to a cause of action. Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991).

When a defendant's contacts with the forum state are "substantial" or "continuous and systematic," general jurisdiction may be exercised over that defendant for any cause of action, even if it is unrelated to the defendant's activities with the forum state. Schwarzenegger, 374 F.3d at 801-02; Data Disc, Inc. v. Sys. Tech. Assocs., 557 F.2d 1280, 1287 (9th Cir. 1977). A court has in personam jurisdiction over an individual who resides within a particular location over which the Court has jurisdiction. In cases where a defendant's contacts are insufficient to support an exercise of general jurisdiction, more limited specific jurisdiction may be found where a cause of action arises out of or is related to the defendant's activities in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-473 (1985); Ballard v. Savage, 65 F.3d

1495, 1498 (9th Cir. 1995).  "Specific jurisdiction may be exercised with a lesser showing of minimum contacts than is required for the exercise of general jurisdiction."  ACORN v. Household Int'l Inc., 211 F. Supp. 2d 1160, 1164 (C.D. Cal. 2002).

"The Ninth Circuit uses a three-part test to determine whether specific jurisdiction exists over a defendant: (1) the defendant must purposefully avail herself of the privilege of conducting activities in the forum by some affirmative act or conduct; (2) the plaintiff's claim must arise out of, or result from, the defendant's forum-related contacts; and (3) the extension of jurisdiction must be 'reasonable.'"  Adv. Skin & Hair, Inc. v. Bancroft, 858 F. Supp. 2d 1084, 1089 (C.D. Cal. 2012) (citing Roth v. Garcia Marquez, 942 F.2d 617, 620-21 (9th Cir. 1991)).

This Court finds it has personal jurisdiction over all parties.  Defendant Weems is a resident of California.  This is evidenced by the account application Weems submitted to Plaintiff, which provided a private mailbox address in Westlake Village, California.  Compl. ¶ 2.  Further, Weems filed an affidavit in this matter in which she provided an address in Thousand Oaks, California.  See V. Aff. by Specific Negative Averment ("Aff."), ECF No. 60.  As such, this Court finds that Weems is a resident of California and thus this Court has general personal

17

jurisdiction over Weems.

This Court further finds it may exercise specific personal jurisdiction over JWLLC and the Trust. Defendant JWLLC is a Delaware Limited Liability Company doing business in Westlake Village, California.  Compl. ¶ 3.  The Trust is an entity with its primary place of business in Wilmington, Delaware.  Id. at ¶ 4. Accordingly, this Court cannot exercise general personal jurisdiction over Defendants JWLLC and the Trust. However, specific personal jurisdiction is appropriate. Plaintiff's cause of action clearly relates to Defendants JWLLC and the Trust's actions in California. Defendants opened the Wells Fargo Account in California and, in doing so, were signatories to a California Certification of Trust.  Merck Decl. ¶¶ 4-5, Exs. 1-2. Specifically, Weems executed, on behalf of herself and JWLCC, a California Certification of Trust.  Merck Decl. ¶ 5; see Merck Decl. Ex. 2.  The Trust was a signatory to the Certification.  See Merck Decl. Ex. 2. Furthermore, the record contains ample evidence showing Weems' withdrawal of the Funds from the Wells Fargo Account was in contravention of the IRS Levy, and ultimately caused the breach of the Consumer Account Agreement, to which Defendants were all a party to. Clearly, Defendants engaged in affirmative conduct availing themselves of the privilege of conducting activities in California.  For the reasons stated above,

18

the exercise of specific personal jurisdiction over Defendants JWLLC and the Trust is "reasonable." This Court finds that it has personal jurisdiction over the parties.

### ii. *Subject matter jurisdiction*

The Court has subject matter jurisdiction over the present matter under 28 U.S.C. § 1332 because the controversy (a) is between citizens of different states and (b) involves an amount of controversy greater than $75,000.00.

This Court finds there is complete diversity of citizenship amongst the parties. Plaintiff is a citizen of South Dakota.[2] JWLLC is a Delaware limited liability company, conducting business in California. Id. at ¶ 3; RJN, Ex. A. The Trust is a citizen of Delaware, evidenced by the account application it submitted to Plaintiff, stating that the Trust is governed under the laws of Delaware. Decl. of Timothy O. Merck ("Merck Decl.") Ex. 1. Finally, as discussed above, Weems is a resident of California. The amount in controversy is in excess of $500,000.00. See generally Compl. Accordingly, this Court finds it has subject matter jurisdiction over the present controversy.

---

[2]Compl. ¶ 1; see also Rouse v. Wachovia Mort., FSB, 747 F.3d 707, 715 (9th Cir. 2014)(holding Wells Fargo Bank "is a citizen only of South Dakota, where its main office is located" and finding there was complete diversity between Wells Fargo and plaintiffs who were California residents).

iii.    *Service of process*

This Court finds Plaintiff has proffered the requisite Proofs of Service [33, 35, 36, 37, 38, 41, 42].   The Proofs of Service show each Defendant was properly served with the summons and Complaint, and thus service of process is complete and proper.

b.   *Procedural Requirements*

This Court finds Plaintiff has met all of the procedural requirements for entry of default judgment pursuant to Local Rule 55-1.   Plaintiff's application includes the identity of the parties that default was entered against, Defendants Weems, JWLLC, and the Trust, and when default was entered against those parties. Mot. 3:9-4:21, ECF No. 74.   Furthermore, Plaintiff's application identifies the pleading to which default was entered, the Complaint.   Id.   There is neither an indication that the defaulting party is an infant or an incompetent person, nor that the Service Members Civil Relief Act applies.   Finally, notice was served on the defaulting parties, to which Defendants never formally responded.   Additionally, default judgment may be entered against Defendants because Plaintiff has sufficiently established the seven Eitel factors, thus satisfying the substantive requirements for entry of default judgment.

c.   *Substantive Requirements*

i.   *Risk of prejudice to Wells Fargo.*

20

The first <u>Eitel</u> factor "considers whether plaintiff will suffer prejudice if default judgment is not entered." <u>Tate v. Molina</u>, 2015 U.S. Dist. LEXIS 3607 (C.D. Cal. Jan. 9, 2015). This Court should find Plaintiff would be prejudiced if default judgment was not entered. As Defendants JWLLC and the Trust have not appeared in this litigation, and Weems has yet to properly respond to Plaintiff's Complaint, Plaintiff would be denied the right to judicial resolution of its claim if default judgment were not entered. <u>Electra Entm't Grp. Inc. v. Crawford</u>, 226 F.R.D. 388, 392 (C.D. Cal. 2005)(holding "plaintiff would suffer prejudice if default judgment is not entered because plaintiff 'would be denied the right to judicial resolution of the claims presented, and would be without other recourse for recovery.'"). Accordingly, this factor weighs in favor of entry of default judgment.

> *ii. The merits of Plaintiff's substantive*
> *claims and sufficiency of the*
> *Complaint.*

The second and third <u>Eitel</u> factors consider the merits of the plaintiff's substantive claims and the sufficiency of the complaint. "Under an [<u>Eitel</u>] analysis, [these factors] are often analyzed together." <u>Tate</u>, 2015 U.S. Dist. LEXIS 3607 at *5 (quoting <u>Dr. JKL Ltd. v. HPC IT Educ. Ctr.</u>, 749 F.Supp.2d 1038, 1048 (N.D. Cal. 2010)). "These two factors require a

plaintiff to 'state a claim on which the [plaintiff] may recover.'"   <u>Id.</u> (quoting <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388 (9th Cir. 1978)).

>    1.    Plaintiff has asserted a meritorious claim for breach of contract against Defendants.

This Court finds, upon review of the record, Plaintiff has proffered ample evidence to assert a meritorious claim for breach of contract against Defendants.  Plaintiff's cause of action for breach of contract is squarely premised on the Consumer Account Agreement that Defendants agreed to adhere to when they opened the Account with Plaintiff.  <u>See</u> Compl. ¶¶ 20-21. On September 1, 2015, Defendants opened a deposit account with Plaintiff by depositing a U.S. Treasury check in the amount of $526,280.64,  Compl. ¶ 11, and executing the requisite Application.  Sheffield Decl. 2:20-25; <u>see</u> Merck Decl. Ex. 1.  In the Application, Defendants acknowledged they had "'received a copy of the applicable account agreement...and agreed to be bound by [its] terms.'"  Sheffield Decl. 3:3-6 (citing Consumer Account Agreement, Ex. 3).  The Consumer Account Agreement provided that all joint owners of the Account, namely Defendants, "are each individually and jointly responsible for any overdraft on [the] account, regardless of who caused or benefitted from the overdraft."  Merck. Decl. Ex. 4, p. 21.  The Consumer

Account Agreement further provided that if an overdraft of the Wells Fargo Account occurred, Defendants must "make a deposit or transfer promptly to return [their] account to a positive balance." <u>Id.</u>

On September 15, 2015, Plaintiff received the IRS Levy, which was directed to the Trust and JWLLC. Compl. ¶¶ 12-13; Merck Decl. Ex. 5. At the time, the balance in the Wells Fargo Account was $526,280.64. Merck Decl. Ex. 7. On September 21, 2015, Weems withdrew $500,000.00 from the Wells Fargo Account via cashiers check, made payable to JWLLC, and withdrew $500.00 from an ATM. Merck Decl. Exs. 6-7. Plaintiff applied the Levy debit to the Wells Fargo Account in the amount of $526,280.64., <u>id.</u> Ex. 7, which resulted in an overdraft of $500,625.00. Compl. ¶ 23; Merck Decl. Ex. 7. Defendants have since failed to restore the Wells Fargo Account to a positive balance and have not repaid any portion of the Funds to Plaintiff, in direct violation of the Consumer Account Agreement. Compl. ¶ 24; Merck Decl. ¶ 13. Plaintiff alleges it has been damaged in the amount of the overdraft, specifically $500,625.00. Mot. for Default J. 10:26-27.

> 2.  Plaintiff has asserted a meritorious claim for imposition of a constructive trust.

California Civil Code section 2224 provides: "One who gains a thing by fraud, accident, undue influence,

the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."  Cal. Civ. Code § 2224.

This Court finds that Plaintiff has sufficiently shown Weems and JWLLC gained possession of the Funds in contravention of the IRS Levy, and have since deposited the Funds into the Chase Account.  Compl. ¶¶ 37-38; see Merck Decl. Exs. 1-9; see generally Merck Decl. Plaintiff alleged this was a "wrongful act" within the meaning of section 2224, and thus, Defendants are "involuntary trustees" of the Funds, for the benefit of Plaintiff.  This Court finds Plaintiff has stated a claim upon which it can recover for imposition of a constructive trust over the Funds.

> 3.  Plaintiff has asserted a meritorious claim for money had and received against Defendants.

"A cause of action for money had and received is stated if it is alleged the defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff."  Kandel v. Brother Intern. Corp., 2009 WL 9100406 (C.D. Cal. Feb. 13, 2009)(citing Farmers Ins. Exchange v. Zerin, 53 Cal. App. 4th 445, 460 (1997)(internal quotations omitted)). Specifically, a plaintiff must allege "'(1) the

statement of indebtedness in a certain sum, (2) the consideration, i.e. goods sold, work done, etc., and (3) nonpayment.'" Id.

Plaintiff has shown, and Defendants have failed to refute, that Defendants became indebted to Plaintiff in a certain sum, specifically the Funds at issue. Plaintiff has shown that Defendants are in possession of the Funds in contravention of the IRS Levy, and as Plaintiff has since satisfied the IRS Levy by debiting and overdrawing Defendants' Wells Fargo Account, Defendants are liable for non-payment. Compl. ¶¶ 34-35. This Court finds Plaintiff has stated a claim upon which it can recover for money had and received.

> 4.   Plaintiff has asserted a meritorious claim for conversion.

"Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." Fischer v. Machado, 50 Cal. App. 4th 1069, 1072 (1996). "To establish a conversion, plaintiff must establish an actual interference with his ownership or right of possession." Id.

In the present case, it is clear from the record that Plaintiff had possession of the Funds at the time it received the IRS Levy. Merck Decl. Ex. 7. Thus, when Defendants withdrew the Funds, the Funds were to be held by Plaintiff for fulfillment of the Levy.

Plaintiff has shown Defendants wrongfully exerted dominion over the Funds by purchasing a $500,000.00 cashier's check and withdrawing $500.00 at an ATM. Compl. ¶¶ 28-29; Merck Decl. Ex. 7.   Plaintiff has identified a specific sum of money which Plaintiff has shown Defendants wrongfully converted.   Accordingly, this Court finds that Plaintiff has demonstrated a meritorious claim for conversion.

> 5.   Plaintiff has asserted a meritorious claim for declaratory relief.

The Declaratory Judgment Act provides a mechanism for the federal courts to "declare the rights and other legal relations of any interested party" seeking declaratory relief in the case of an "actual controversy."   28 U.S.C. § 2201(a); <u>see also</u> <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 239-240 (1937).   The touchstone of the case or controversy requirement is whether the "adverse positions [of the parties] have crystallized."   <u>Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.</u>, 655 F.2d 938, 943 (9th Cir. 1981).

This Court finds that upon Plaintiff's extensive showing that the Funds were wrongfully withdrawn by Defendants, in contravention of the IRS Levy, and upon showing Plaintiff has since paid the IRS Levy, Plaintiff should be declared the sole owner of the Funds. Defendants should be declared to have no right, title,

or interest in, the Funds.

Accordingly, the second and third <u>Eitel</u> factors weigh in favor of entry of default judgment.

> iii.   *The sum of money at stake in the action.*

"Under the fourth <u>Eitel</u> factor, 'the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct.'" <u>Tate</u>, 2015 U.S. Dist. LEXIS 3607 at *10 (quoting <u>PepsiCo, Inc. v. California Sec. Cans</u>, 238 F.Supp.2d 1172, 1176 (C.D. Cal. 2002)). "'The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable.'" <u>Id.</u> (quoting <u>Truong Giang Corp. v. Twinstar Tea Corp.</u>, 2007 U.S. Dist. LEXIS 100237 (N.D. Cal. 2007)).

In the present case, Plaintiff requests a recovery of $500,625.00, the amount of the overdraft of the Wells Fargo Account, plus prejudgment interest and attorneys' fees.  This Court finds Plaintiff has submitted sufficient supporting documentation for the requested damages.  Additionally, as discussed further below, the prejudgment interest and attorneys' fees sought are warranted and reasonable.  Accordingly, this Court should find Plaintiff's total requested sum is reasonable.  This factor weighs in favor of entry of default judgment.

1
2

> *iv. The possibility of a dispute concerning the material facts.*

3       As for Defendants JWLLC and the Trust, this Court
4   finds that it is not clear that there would be any
5   genuine dispute of material fact, as JWLLC and the Trust
6   have not answered or otherwise appeared in this Action.
7   "Upon entry of default, the well-pleaded allegations in
8   the complaint are taken as true, except those relating
9   to damages."   Tate, 2015 U.S. Dist. LEXIS 3607 at *12
10  (citing TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d
11  915, 917-918 (9th Cir. 1987)).   "In addition, '[t]he
12  district court is not required to make detailed findings
13  of fact.'"   Id. (citing Fair Housing of Marin v. Combs,
14  285 F.3d 899, 908 (9th Cir. 2002)).   In Tate, the
15  district court found: "Since defendant never answered or
16  otherwise appeared in this action, it is unclear whether
17  there would be any genuine dispute of material facts."
18  Id.   As in Tate, this Court should find no impediment to
19  entry of default judgment against Defendants JWLLC and
20  the Trust.

21      As to Defendant Weems, Weems did not properly
22  respond to Plaintiff's Complaint.   Rather, Weems filed a
23  Verified Affidavit by Specific Negative Averrment [60]
24  that appears to be either an untimely and improper
25  response to Plaintiff's Complaint, or an untimely
26  opposition to this Court's October 08, 2015 Order to
27  Show Cause [32].   See generally Verified Aff., ECF No.

28                                28

60.   Local Rule 7-12 reads: "This Court may decline to consider any memorandum or other document not filed within the deadline set by order or local rule.   The failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion."   L.R. 7-12.

Plaintiff's filing [60] is neither a timely nor a proper responsive pleading to Plaintiff's Complaint, and for this initial reason, the Court need not consider it in determining a genuine dispute of material facts. Alternatively, if Weems' filing was intended to be a response to this Court's October 8, 2015 Order to Show Cause, it would similarly need not be considered as this Court ordered Defendants to respond no later than October 22, 2015.   See Order dated 10/8/2015, ECF No. 32.   Plaintiff's Affidavit was filed on November 3, 2015.   See Verified Aff., ECF No. 60.   Therefore, regardless of whether Weems' Affidavit was intended to be a response to this Court's previous Order to Show Cause or a response to Plaintiff's Complaint, this Court may, within its discretion, decline to consider it in determining whether there exists a genuine dispute over material facts for purposes of default judgment.

Still, even if this Court were to consider Weems' Verified Affidavit, this Court nevertheless finds there is no genuine dispute of material fact impeding this Court's entry of default judgment against Weems.   In her

Affidavit, Weems disputes two facts, both of which this Court finds would raise no genuine dispute of material fact in this Action.

> ### v.   Whether Defendants' default was the product of excusable neglect.

"Excusable neglect is an equitable concept that takes account of factors such as 'prejudice . . ., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" <u>Tate</u>, 2015 U.S. Dist. LEXIS 3607 at *12 (quoting <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership</u>, 507 U.S. 380, 395 (1993)).

As discussed above, it is clear from the record that Plaintiff's counsel communicated with Weems on numerous occasions since the inception of the matter. Despite the evidence of ample communication between the parties, and even warnings from Plaintiff to Defendants that Defendants are in danger of entry of default, Defendants failed to file responsive pleadings.  This Court finds that Weems has proffered no convincing evidence that her failure to defend or otherwise respond in this action is due to excusable neglect.  Defendants JWLLC and the Trust have not appeared at all in this matter.  Accordingly, this factor weighs in favor of default judgment against all Defendants.

*vi. The strong public policy favoring decisions on the merits.*

Although there is a strong policy underlying the Federal Rules of Civil Procedure which favors decisions on the merits "whenever reasonably possible," <u>Tate</u>, 2015 U.S. Dist. LEXIS 3607 at *13 (quoting <u>Eitel</u>, 782 F.2d at 1427), "'this preference, standing alone, is not dispositive.'" <u>Id.</u> (quoting <u>Kloepping v. Fireman's Fund</u>, 1996 U.S. Dist. LEXIS 1786 (N.D. Cal. 1996)). In deciding to grant default judgment, the <u>Tate</u> court noted: "Defendant's failure to answer the Complaint makes a decision on the merits impractical, if not impossible." <u>Id.</u> (citing <u>PepsiCo, Inc. v. California Sec. Cans</u>, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002)). "Under Fed. R. Civ. P. 55(b), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." <u>Id.</u>

In the present case, Defendants have similarly made it impractical to decide the matter on the merits. In fact, no adjudication of the substantive claims can occur because none of the Defendants answered Plaintiff's Complaint. Weems' few appearances include an untimely Affidavit [60] with some ultimately irrelevant factual contentions, and a Motion to Set Aside Entry of Default [78], filed after Plaintiff had already sought entry of default judgment [74]. This Court finds entry of default judgment is appropriate in

this matter.

Because all <u>Eitel</u> factors weigh in favor of default judgment, this Court **GRANTS** Plaintiff's Motion for Default Judgment [74] against all Defendants.

4.  <u>Plaintiff and Chase's Stipulation Re: Turnover of Funds to Wells Fargo Bank, N.A. and Dismissal of Defendant JPMorgan Chase Bank, N.A. [73]</u>

Good cause appearing, the Court **GRANTS** Plaintiff and Chase's Stipulation [73].  Accordingly, this Court imposes a constructive trust over the Funds in favor of Plaintiff.  This Court orders Chase, a nominal party in this matter, to turn over the Funds to Plaintiff within three business days of entry of this Judgment.  Further, this Court hereby dismisses Chase from this matter with prejudice, although retains jurisdiction over Chase for the limited purpose of enforcing its obligation to turn over the Funds to Plaintiff.

5.  <u>Plaintiff's Request for Damages</u>

Plaintiff has proffered ample evidence in support of its contention that these damages are reasonable. Again, when Plaintiff received the IRS Levy, the Wells Fargo Account balance was $526,280.64.  Merck Decl. Ex. 7.  Plaintiff applied the Levy debit to the Account, and charged a $125.00 processing fee.  Defendants depleted the Wells Fargo Account by withdrawing $500,500.00, resulting in an Overdraft of $500,625.00.

This Court finds that although Plaintiff's damages are reasonably supported by evidence in the record, the damages will be reduced to the amount of Plaintiff's actual loss suffered, in light of Plaintiff and Chase Bank's Stipulation [73].  Pursuant to the Stipulation, Chase Bank is ordered to turn over the Funds withdrawn from the Wells Fargo Account and deposited into Defendants' Chase Account, specifically $500,000.00. Compl. ¶¶ 15-16; <u>see</u> Merck Decl. Ex. 8.  Accordingly, Plaintiff's actual loss amounts to $625.00: composed of $500.00 that Weems withdrew from the Wells Fargo Account from an ATM, <u>see</u> Merck Decl. Exs. 6-7, and $125.00 for the overdraft fee charged when Plaintiff applied the IRS Levy to the Wells Fargo Account.  <u>See</u> <u>Id.</u>  The Court thus **GRANTS** Plaintiff's request for damages, however limits damages to $625.00.

6.  <u>Plaintiff's Request for Prejudgment Interest</u>

"Under California Civil Code § 3287(a), '[e]very person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day . . . .'" <u>Evanston Ins. Co. v. OEA, Inc.</u>, 566 F.3d 915, 917 (9th Cir. 2009). "California cases uniformly have interpreted the 'vesting' requirement as being satisfied at the time that the amount of damages become certain or capable of

33

being made certain, not the time liability to pay those amounts is determined." Id. at 921 (citing Hartford Accident & Indem. Co. v. Sequoia Ins. Co., 211 Cal. App. 3d 1285, 1291 (1989)). California Civil Code § 3289(b) provides: "If a contract entered into after January 1, 1986 does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach." Cal. Civ. Code § 3289(b).

In the present case, the Court finds Plaintiff's damages were capable of being made certain on the date of the overdraft, specifically, September 24, 2015. This Court thus **GRANTS** Plaintiff's request for prejudgment interest, measuring the prejudgment interest from the date of September 24, 2015.

    7.   <u>Plaintiff's Request for Attorneys' Fees</u>

Plaintiff requests an award of attorneys' fees for litigating the present matter, in the amount of $27,459.98. As discussed above, in opening the Wells Fargo Account, Defendants became signatories to the Consumer Account Agreement. <u>See</u> Merck Decl. Ex. 2. The Consumer Account Agreement includes the following fee provision: "If you [customer] fail to bring your checking account to a positive balance, we will close your account. Also we may report you to consumer reporting agencies and initiate collecting efforts. *You agree to reimburse us for the costs and expenses (including attorney's fees and expenses) we incur.*"

34

Merck Decl. Ex. 2, p. 21 (emphasis added).

Plaintiff proffered detailed invoices showing the billing attorneys, their rates, the tasks they performed, and the hours spent, attached as Exhibits A and B to the Mark T. Flewelling Declaration ("Flewellign Declaration"). <u>See</u> Flewelling Decl. Exs. A, B.  This Court finds that Plaintiff's requested total attorneys' fees of $27,459.98 are reasonable.  This Court **GRANTS** Plaintiff's request for attorneys' fees in its entirety.

### III.   CONCLUSION

Based on the foregoing, this Court **GRANTS** Plaintiff's Motion for Default Judgment by the Court [74].  This Court further **GRANTS** Plaintiff and Chase's Stipulation Re: Turnover of Funds to Wells Fargo Bank, N.A. and Dismissal of Defendant JPMorgan Chase Bank, N.A. [73].  The Court **DENIES** Defendant Julia Weems' Motion to Set Aside Entry of Default [78].

Accordingly, the Court **FINDS AND HOLDS AS FOLLOWS:**

1.   Plaintiff is entitled to entry of default judgment against Defendants, that provides for:

    a.   An award of damages against Defendants, jointly and severally, in the amount of $625.00;

    b.   An award of prejudgment interest measured from September 24, 2015;

    c.   An award of attorneys' fees of $27,459.98;

    d.   Imposition of a constructive trust on the

proceeds of the $500,000.00 cashier's check that was deposited on September 21, 2015 into the Chase Account;

e.   A permanent injunction against Defendants, their officers, agents, servants, employees, and attorneys, and all other person who are in active concert or participation with anyone described above, that permanently restrains and enjoins them from moving, transferring or withdrawing the Funds from the Chase Account, and from otherwise using or spending the Funds; and

f.   A judicial declaration that Wells Fargo is the sole owner of the Funds, and Defendants, their predecessors, successors, insurers, agents, employees, directors, officers, shareholders, attorneys, affiliates, parents, subsidiaries, beneficiaries, trustees, and each of them, have no right or title to, or interest in, the Funds.

DATED: March 18, 2016        /s/ RONALD S.W. LEW
                             **Honorable Ronald S.W. Lew**
                             Senior U.S. District Judge

36